IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **KEVIN KAHLE,** individually and on behalf of all other similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**CARBRAIN, LLC**, a Delaware registered company,<br><br>*Defendant.* | Case No. 5:25-cv-813<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Kevin Kahle ("Plaintiff Kahle" or "Kahle") brings this Class Action Complaint and Demand for Jury Trial against Defendant CarBrain LLC ("Defendant" or "CarBrain") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the North Carolina Telephone Solicitations Act ("NCTSA") by sending text messages to consumers after they have expressly requested that Defendant stop text messaging them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kahle, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Kahle is a resident of Benson, North Carolina.

2. Defendant CarBrain is a Delaware registered company located in Miami Lakes, Florida. Defendant CarBrain conducts business throughout this District and the US, including in North Carolina.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 3.7 billion robocalls were placed in October 2025 alone, at a rate of 120.6 million per day. www.robocallindex.com (last visited November 18, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant CarBrain operates a nationwide car-buying service that markets itself as providing consumers with a convenient, hassle-free alternative to traditional car sales.

14. CarBrain's business model is premised on offering consumers a service that eliminates the time, effort, and complexity typically associated with selling a vehicle privately or through a dealership.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

15. CarBrain's service includes: (a) instant online vehicle valuations through its proprietary algorithm; (b) transaction facilitation and coordination; (c) payment processing; (d) vehicle pickup and transportation services; (e) title transfer assistance; and (f) elimination of traditional selling hassles such as advertising, negotiating with multiple buyers, and coordinating test drives.

16. CarBrain generates revenue by purchasing vehicles at below-market prices and reselling them at a profit. The difference between the price CarBrain offers consumers and the ultimate resale value represents CarBrain's compensation for its car-selling service. Consumers effectively pay for CarBrain's service through accepting lower valuations in exchange for the convenience and speed CarBrain offers.

17. CarBrain actively markets its car-buying service to consumers through various channels, including through text messages. These marketing communications advertise the commercial availability and benefits of CarBrain's vehicle-selling service, encouraging consumers to use CarBrain's platform to sell their vehicles rather than pursuing traditional sale methods."

18. However, CarBrain fails to maintain a sufficient opt-out system, causing consumers to receive text messages after they revoked their consent will be seen through Plaintiff's experience.

19. Consumers have posted complaints online about unsolicited calls and text messages that they received from CarBrain *after* opting-out, including:

- "Pretty annoying when you contact a company and SPECIFICALLY say your not looking to sell right now, just wanting an estimate, and ***they call and email you every single day multiple times a day for a week straight pestering you to sell your vehicle to them***. I'm sure this IS a good company but good lord the sales reps are beyond annoying, no one wants to work with a company who does nothing but pester people !!"[3] (emphasis added)

[3] http://tiny.cc/w29v001

- "I sold my vehicle for over twice what these clowns have offered and I dont know why ***they continue to contact me after I have repeatedly asked them to stop***?"[4]
- "Very low offer, $365 firm. Received an offer of $520 from Peddle without question. Elmer, from CarBrain kept ***annoying me with emails and texts*** even after I told him I had selected another buyer. These guys offer LOW BIDS and ***keep annoying you after you say no***. Had to block Elmer and the company to make it stop."[5]
- "Provided details to this service to sell my car , after rejecting their offer and after selling the car somewhere else and telling them the car has been sold ***they continue to send me email and text message offers for a car I no longer own***."[6]

20. In response to these text messages, Plaintiff Kahle brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and NCTSA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF KAHLE'S ALLEGATIONS

21. Plaintiff Kahle and his wife are the sole owners and exclusive users of the cell phone number ending in 1274.

22. Plaintiff Kahle's cell phone number begins with a 984 North Carolina area code.

23. Plaintiff Kahle is a resident of North Carolina and was present in North Carolina during the time he received text messages from CarBrain.

24. On October 21, 2025, Plaintiff Kahle visited CarBrain.com and entered a request for a quote for selling his vehicle.

25. Plaintiff Kahle provided his phone number on Carbrain's website form.

26. Plaintiff Kahle received a text message from Defendant to his cell phone from 786-460-7126 on October 21, 2025 at 5:57 PM:

---

[4] Id.
[5] https://www.yelp.com/biz/carbrain-miami-lakes-3?sort_by=rating_asc
[6] https://www.bbb.org/us/fl/hialeah/profile/auto-appraiser/carbrain-llc-0633-90365697/complaints?page=2




27. On October 21, 2025 at 10:42 PM, Plaintiff revoked his consent by stating "Do not contact me again."




28. On October 22, 2025 at 9:16 AM, Plaintiff Kahle received a confirmation text from 786-460-7126 confirming the stop request.




29. Despite the clear stop request, Plaintiff Kahle received 2 unsolicited autodialed text messages from 786-460-7126 on October 28, 2025 at 8:29 AM:




30. The unauthorized solicitation text messages that Plaintiff received after he revoked his consent have harmed Plaintiff Kahle in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

31. Seeking redress for these injuries, Plaintiff Kahle, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA and North Carolina Telephone Solicitations Act.

## CLASS ALLEGATIONS

32. Plaintiff Kahle brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action to the date of class certification (1) Defendant CarBrain texted more than one time, (2) within any 12-month period, (3) for substantially the same reason Defendant texted Plaintiff, (4) including at least once after Defendant's records reflect the person requested that they stop texting.

> **North Carolina Telephone Solicitations Act:** All persons in North Carolina who from four years prior to the filing of this action to the date of class certification (1) Defendant CarBrain sent a text message to their phone number (2) where the text

was sent for the purpose of soliciting the sale of a vehicle (3) at least once after Defendant's records reflect the person requested that they stop texting.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Kahle anticipates the need to amend the Class definitions following appropriate discovery.

34. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant CarBrain placed at least one text messages to Plaintiff and other consumers after being told to stop texting;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether the text messages constitute a violation of the NCTSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff Kahle will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Kahle has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Kahle and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Kahle nor his counsel have any interest adverse to the Classes.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kahle. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kahle and the Internal Do Not Call Class)**

38. Plaintiff repeats and realleges paragraphs 1-37 of this Complaint and incorporates them by reference herein.

39. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf

> the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

40. Defendant placed text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

41. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

42. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## SECOND CAUSE OF ACTION

**North Carolina Telephone Solicitations Act – Opt-Out Violations**
**(Violation of N.C. Gen. Stat. §§ 75-100 et seq.)**
**(On Behalf of Plaintiff Kahle and the North Carolina Telephone Solicitations Act)**

43. Plaintiff repeats and realleges paragraphs 1-37 of this Complaint and incorporates them by reference herein.

44. Under N.C. Gen. Stat. § 75-102(c), no telephone solicitor may contact a person after that person has communicated a desire not to receive further solicitations.

45. Defendant violated N.C. Gen. Stat. §§ 75-102(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kahle and the North Carolina Telephone Solicitations Act members who indicated a desire not to receive further solicitations.

46. Plaintiff Kahle brings this claim on behalf of himself and the NCTSA Class pursuant to the private right of action established in N.C. Gen. Stat. § 75-104.

47. As a result of Defendant's conduct as alleged herein, Plaintiff Kahle and the NCTSA Class suffered actual damages and, under N.C. Gen. Stat. § 75-105(b), are entitled to recover $500 per violation or treble actual damages, whichever is greater.

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the NCTSA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kahle requests a jury trial.

**KEVIN KAHLE**, individually and on behalf of all others similarly situated,

DATED this 16th day of December, 2025.

By: /s/ *Ryan Duffy*

The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, North Carolina 28012
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Classes*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming*